**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 16 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MOUNTAIN WEST HOLDING CO., INC., | No. 14-36097 |
| Plaintiff-Appellant, | D.C. No. 1:13-cv-00049-DLC |
| v. | |
| THE STATE OF MONTANA; et al., | MEMORANDUM * |
| Defendants-Appellees, | |
| and | |
| PATTI MCCUBBINS, MDT's Civil Rights Bureau Chief and DBE Liaison Officer; named only in her official capacity, | |
| Defendant. | |

| | |
|---|---|
| MOUNTAIN WEST HOLDING CO., INC., | No. 15-35003 |
| Plaintiff-Appellee, | D.C. No. 1:13-cv-00049-DLC |
| v. | |
| THE STATE OF MONTANA; et al., | |
| Defendants-Appellants, | |
| and | |

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

PATTI MCCUBBINS, MDT's Civil Rights Bureau Chief and DBE Liaison Officer; named only in her official capacity,

Defendant.

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, Chief Judge, Presiding

Argued and Submitted March 10, 2017
Portland, Oregon

Before: LEAVY and FRIEDLAND, Circuit Judges, and BENITEZ,[**] District Judge.

    Montana and its state Department of Transportation receive federal funds for transportation projects. As a condition of accepting those dollars, the State must set up a program to avoid discrimination against "small business concerns owned and controlled by socially and economically disadvantaged individuals." *See* Moving Ahead for Progress in the 21st Century Act, Pub. L. No. 112–141, § 1101(b)(3), 126 Stat. 405, 415 (2012). Federal law and regulations require states to presume that women and certain racial and ethnic minorities are economically and socially disadvantaged and authorizes states to set race- and gender-conscious contract goals in certain circumstances. *See W. States Paving Co. v. Wash. State*

---

    [**] The Honorable Roger T. Benitez, United States District Judge for the Southern District of California, sitting by designation.

*Dep't of Transp.*, 407 F.3d 983, 988-90 (9th Cir. 2005). These preferred contractors are commonly referred to as disadvantaged business enterprises or "DBEs."

Mountain West Holding Company installs signs, guardrails, and concrete barriers on highways in Montana. It competes to win subcontracts from prime contractors who have contracted with the State. It is not owned and controlled by women or minorities. Some of its competitors are. In this case it claims that Montana's DBE goal-setting program unconstitutionally required prime contractors to give preference to these minority or female-owned competitors, which Mountain West argues was a violation of 42 U.S.C. § 1983 and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq*.

The district court granted summary judgment to the State, and Mountain West appealed. Montana also appealed the district court's threshold determination that Mountain West had a private right of action under Title VI, and it appealed the district court's denial of the State's motion to strike an expert report submitted in support of Mountain West's motion.

We dismiss Mountain West's appeal as moot to the extent Mountain West pursues equitable remedies, affirm the district court's determination that Mountain West has a private right to enforce Title VI, affirm the district court's decision to

3

consider the disputed expert report, and reverse the order granting summary judgment to the State.

**I.     Mootness**

Montana does not currently employ gender- or race-conscious goals, and the data it relied upon as justification for its previous goals are now several years old. Mountain West's claims for injunctive and declaratory relief are therefore moot. *See, e.g.*, *Los Angeles County v. Davis*, 440 U.S. 625, 631-34 (1979); *Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 963-64 (9th Cir. 2007).

Mountain West's Title VI claim is not moot, however. A plaintiff may seek damages to remedy violations of Title VI, *see* 42 U.S.C. § 2000d-7(a)(1)-(2); *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001), and Mountain West has sought damages. Claims for damages do not become moot even if changes to a challenged program make claims for prospective relief moot. *See, e.g.*, *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 8-9 (1978).

The appeal is therefore dismissed with respect to Mountain West's claims for injunctive and declaratory relief; only the claim for damages under Title VI remains.[1]

---

[1] We grant Montana's motion to amend the caption because the Defendants whose presence in the caption was contested could only be sued for equitable relief, *see Papasan v. Allain*, 478 U.S. 265, 278 (1986), and the equitable relief claims must be dismissed as moot.

4

**II.     Private Rights of Action under Title VI**

Reviewing de novo, we conclude for the reasons in the district court's order that Mountain West may state a private claim for damages against Montana under Title VI.  *See Sandoval*, 532 U.S. at 279-80; *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 977-78 (9th Cir. 2004); *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004).

**III.    The Expert Report of George R. LaNoue**

Montana argues that the district court incorrectly admitted the report of Mountain West's expert witness, George R. LaNoue, Ph.D.  Evidentiary decisions such as this one are reviewed for an abuse of discretion, even in the context of summary judgment.  *School Dist. No. 1J, Multnomah Cty. v. ACandS, Inc.*, 5 F.3d 1255, 1261 (9th Cir. 1993).  A ruling can be reversed only if it was "manifestly erroneous *and* prejudicial."  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

We affirm the district court's decision to consider the report.  Although the report was authenticated after it was filed, the district court made a reasonable decision to admit and consider it, and it seems Mountain West suffered no prejudice as a result.

## IV. Discrimination Under Title VI

The district court granted summary judgment to Montana on Mountain West's claims for discrimination under Title VI. We review that decision de novo, applying the same legal standard as the district court. *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 988-89 (9th Cir. 2016) (en banc) (per curiam). Evidence is viewed in the light most favorable to the non-moving party. *Id.* Simultaneous cross-motions are considered independently under the same standard. *See, e.g.*, *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015).

Montana does not dispute that its program took race into account. Classifications based on race are permissible "only if they are narrowly tailored measures that further compelling governmental interests." *W. States Paving*, 407 F.3d at 990 (quoting *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 227 (1995)).[2] Montana bears the burden to justify any racial classifications. *Id.* In an as-applied challenge to a state's DBE contracting program, "(1) the state must establish the presence of discrimination within its transportation contracting

---

[2] As in *Western States Paving*, we apply here the same test to claims of unconstitutional discrimination and discrimination in violation of Title VI. *See* 407 F.3d at 987; *see also Sandoval*, 532 U.S. at 281 (noting that Title VI "proscribes only those racial classifications that would violate the Equal Protection Clause of the Fifth Amendment" (citation and quotation marks omitted)).

6

industry, and (2) the remedial program must be 'limited to those minority groups that have actually suffered discrimination.'" *Assoc. Gen. Contractors of Am. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1196 (9th Cir. 2013) (quoting *W. States Paving*, 407 F.3d at 997-99). Discrimination may be inferred from "a significant statistical disparity between the number of qualified minority contractors willing and able to perform a particular service and the number of such contractors actually engaged by the locality or the locality's prime contractors." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 509 (1989).

    Here, the district court held that Montana had satisfied its burden. In reaching this conclusion, the district court relied on three types of evidence offered by Montana. First, it cited a study prepared by the D. Wilson Consulting Group ("Wilson"), which reported disparities in professional services contract awards in Montana. Second, the district court noted that participation by DBEs declined after Montana abandoned race-conscious goals in the years following our decision in *Western States Paving*, 407 F.3d 983. Third, the district court cited anecdotes of a "good ol' boys" network within the State's contracting industry. We hold that summary judgment was improper in light of genuine disputes of material fact as to the Wilson study's analysis, and because the second two categories of evidence were insufficient to prove a history of discrimination.

**A.     The Wilson Study**

Through his expert report and deposition, LeNoue testified that the Wilson firm relied on several questionable assumptions and an opaque methodology to conclude that professional services contracts were awarded on a discriminatory basis. *See Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1270 (9th Cir. 1994) (explaining that conflicting expert testimony is itself "sufficient to create a genuine issue of disputed fact sufficient to defeat a summary judgment motion"). A few examples illustrate the areas in which there are disputes of fact as to whether the Wilson study sufficiently supported Montana's actions:

1.     Our cases require states to ascertain whether lower-than-expected DBE participation is attributable to factors other than race or gender. *W. States Paving*, 407 F.3d at 1000-01. LeNoue argues that the Wilson study did not explain whether or how Wilson accounted for a given firm's size, age, geography, or other similar factors. The Wilson report's authors were unable to explain their analysis in depositions for this case. Indeed, even Montana appears to have questioned the validity of Wilson's statistical results.

2.     Wilson relied on a telephone survey of a sample of Montana contractors. LeNoue argued that (a) it is unclear how Wilson selected that sample, (b) only a small percentage of surveyed contractors responded to questions, and

8

(c) it is unclear whether responsive contractors were representative of nonresponsive contractors.

 3. Wilson relied on very small sample sizes but did no tests for statistical significance, and Wilson admitted that "some of the population samples were very small and the result may not be significant statistically."

 4. LaNoue argued that Wilson gave equal weight to professional services contracts and construction contracts, but professional services contracts composed less than ten percent of total contract volume in the State's transportation contracting industry.

 5. LaNoue argued that Montana incorrectly compared the proportion of available *sub*contractors to the proportion of *prime* contract dollars awarded. The district court did not address this criticism or explain why Wilson's comparison was appropriate.

**B. The Post-2005 Decline in Participation by DBEs**

We are likewise unable to affirm the district court's order in reliance on the decrease in DBE participation after 2005. In *Western States Paving,* we held that a decline in DBE participation after race- and gender- based preferences are halted is not necessarily evidence of discrimination against DBEs. *See* 407 F.3d at 999 ("If [minority groups have not suffered from discrimination], then the DBE program provides minorities who have not encountered discriminatory barriers with an

9

unconstitutional competitive advantage at the expense of both non-minorities and any minority groups that have actually been targeted for discrimination."); *id.* at 1001 ("The disparity between the proportion of DBE performance on contracts that include affirmative action components and on those without such provisions does not provide any evidence of discrimination against DBEs."); *see also* U.S. Dep't of Transp., Western States Paving Co. Case Q&A (Dec. 16, 2014) ("In calculating availability of DBEs, [a state's] study should not rely on numbers that may have been inflated by race-conscious programs that may not have been narrowly tailored.").

C. **Anecdotal Evidence of Discrimination**

Without a statistical basis, the State cannot rely on anecdotal evidence alone. *Coral Const. Co. v. King Cty.*, 941 F.2d 910, 919 (9th Cir. 1991) ("While anecdotal evidence may suffice to prove individual claims of discrimination, rarely, if ever, can such evidence show a systemic pattern of discrimination necessary for the adoption of an affirmative action plan."); *see also Croson*, 488 U.S. at 509 ("[E]vidence of a pattern of individual discriminatory acts can, if supported by appropriate statistical proof, lend support to a local government's determination that broader remedial relief is justified.").

\* \* \*

In sum, because we must view the record in the light most favorable to Mountain West's case, we conclude that it provides an inadequate basis for summary judgment in Montana's favor.

## V.  Conclusion

We reverse and remand for the district court to conduct whatever further proceedings it considers most appropriate, including trial or the resumption of pretrial litigation.  *See* Fed. R. Civ. P. 16(b)(4) (allowing modification of a scheduling order for good cause); *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 964 (9th Cir. 2004) (noting that a district court had discretion to reopen discovery on remand given this court's clarifications on appeal).

**DISMISSED in part, REVERSED in part, and REMANDED.**