DAVID L. OHLER
VALERIE D. WILSON
Special Assistant Attorneys General
Montana Department of Transportation
P.O. Box 201001
Helena, MT 59620-1001
(406) 444-6094
(406) 444-6065
Email:  dohler@mt.gov; valwilson@mt.gov

ATTORNEYS FOR DEFENDANTS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

_____

| | |
|---|---|
| MOUNTAN WEST HOLDING CO., INC., | Cause No. CV-13-49-BLG |
| Plaintiff, | DEFENDANTS' TRIAL BRIEF |
| v. | |
| STATE OF MONTANA; DEPATMENT OF TRANSPORTATION; MR. MIKE TOOLEY, DIRECTOR; and MS. PATTI MCCUBBINS, CIVIL RIGHTS BUREAU CHIEF, | |
| Defendants. | |

_____

Mountain West Holding Company (MWHC) is a contractor that works as a prime contractor and subcontractor in Montana's highway construction industry. MWHC is suing the State of Montana Department of Transportation (MDT) for its

implementation of the of the federal Disadvantaged Business Enterprise (DBE) program.

The federal program defines DBE eligibility. To be an eligible DBE, a firm must be a small business with average gross annual receipts not to exceed $22.41 million over the previous three fiscal years. 49 C.F.R. § 26.65(a) & (b). MWHC is not a small business as defined by the regulation. *See Stipulation of Net Worth, DOC 52-4*.

Federal eligibility criteria further requires that the small business be at least 51 percent owned by socially and economically disadvantaged individuals. 49 C.F.R. § 26.69(b). The federal regulations include a rebuttable presumption that certain minorities and women are socially and economically disadvantaged. Section 26.67(a)(1). Small firms owned by individuals not covered by the presumption qualify as DBEs if the owners demonstrate social and economic disadvantage to the certifying authority. §26.67(d)(1).

Each applicant owner must attest that his or her personal net worth does not exceed $1.32 million. 49 C.F.R. § 26.67(a)(2). If an owner's personal net worth exceeds $1.32 million, they are not economically disadvantaged as defined by 49 C.F.R. § 26.67(b)(2)-(3). Pursuant to Appendix F to Part 26, each applicant must sign an Affidavit of Certification, under risk of perjury, certifying that they are socially disadvantaged:

> I certify that I am socially disadvantaged because I have been subjected to racial or ethnic prejudice or cultural bias, or have suffered the effects of discrimination, because of my identity as a member of one or more of the groups identified above [Female, Black American, Hispanic American, Native American, Asian Pacific American, Subcontinent Asian American, Other], without regard to my individual qualities.
>
>     \*  \*  \*  \*  \*  \*
>
> I declare under penalty of perjury that the information provided in this application and supporting documents is true and correct.

Appendix F to Part 26.

The federal program requires states to set an overall goal for DBE participation in federal contracts based upon evidence of DBE availability. 49 CFR 26.45(a)(1) &(b). The federal regulations require states to: "establish contract goals to meet any portion of your overall goal you do not project being able to meet using race-neutral means." 49 CFR § 26.51(d). While inartfully drafted, since DBEs, by definition, include nonminority firms, once a state establishes a DBE contract goal, it can only award the project to a prime contractor who makes good faith efforts to meet the goal. 49 CFR § 26.53(a). The prime contractor can demonstrate good faith effort by either meeting the DBE goal, or showing that it made good faith efforts to achieve the goal. *Id.*

There is very little room for states to deviate from the federal program. 49 CFR Part 26 establishes the provisions of the DBE program. Any exemption from the federal program must be made in writing to the Secretary of Transportation, and will only be granted if there are "special or exceptional circumstances, not

likely to be generally applicable, and not contemplated in connection with the rulemaking that established [Part 26]." *49 CFR § 26.15(a).* The regulations that require states to rebuttably presume women and minorities are socially and economically disadvantaged are located in Subpart D. Regulations in Subpart D may not be waived. *49 C.F.R. § 26.15(b).*

FHWA is intimately involved in MDT's DBE program. They meet with the Office of Civil Rights routinely, and conduct program evaluations on a regular and recurring basis. MDT's goal methodology, like the 2011-2013 methodology at issue in this case that set overall DBE goals and that proposed the use of contract goals, must be approved the FHWA before it may be implemented.

MWHC has not challenged the federal program. It has one remaining claim against the State of Montana and MDT. MWHC is seeking damages against the State of Montana and MDT under Title VI "because it gives preference in awarding contacts based upon the awardees' race, color and national origin". *Amd.Comp. 7.2 & 7.4.*

**MWHC's Burden of Proof**

A plaintiff challenging the government's use of affirmative action bears the burden of proof. *Officers of Justice v. Civil Service Comm.,* 979 F.2d 721, 724 (9th Cir. 1992); *Wygant v. Jackson Bd. of Education,* 476 U.S. 267, 277-8 (1986). Where a race-based program is subject to strict scrutiny, the plaintiff bears the

burden of proving by a preponderance of the evidence that the government did not have a compelling interest or that the use of remedial action was not narrowly tailored. *Ashton v. City of Memphis,* 49 F.Supp. 2d 1051, 1056 (W.D.Tenn. 1999).

The party invoking federal jurisdiction bears the burden of establishing standing. *Interstate Traffic Control v. Beverage,* 101 F.Supp.2d 445, 449-50 (S.D.W.V. 2000).

**MWHC Lacks Standing**

Article III of the United States Constitution requires that a plaintiff allege personal injury that is fairly traceable to the defendant's purportedly unlawful conduct. *Coral Construction Co. v. King County,* 941 F.2d 910, 929 (9th Cir. 1991). Standing is a threshold jurisdictional question. The Plaintiff bears the burden of proof that it has standing.

The irreducible minimum of Article III standing contains three requirements: First, a plaintiff seeking to invoke federal court jurisdiction must show it has suffered an injury in fact – a harm suffered by the plaintiff that is concrete and particularized, actual or imminent, and not conjectural or hypothetical. Second, the plaintiff must show a causal connection between the injury and the challenged action of the defendant; the causal connection cannot be overly attenuated. Third, the plaintiff must show that it is likely – rather than merely speculative – that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,*

504 U.S. 555, 560-1 (1992); *Braunstein v. Arizona DOT,* 683 F.3d 1177, 1184 (9th Cir. 2012). MWHC meets none of the three requirements.

In order to establish an injury in fact, MWHC must demonstrate it would have received the projects it allegedly lost under a race-neutral policy. *Donahoe v. City of Boston,* 304 F.3d 110, 118-9 (1st Cir. 2002). MWHC cannot do so because it lost the projects to DBE firms owned by women.

MWHC cannot establish causation or redressability because even if the rebuttable presumption of disadvantage were removed, the Program would still exist and MWHC would not qualify for DBE status due to its net worth. *Klaver Construction v. Kansas,* 211 F.Supp. 1296, 1302 (D.Ka. 2002); *Cache Valley Electric v. Utah,* 149 F.3d 1119 (10th Cir. 1998).

**MWHC is Not Similarly Situated to DBEs**

MWHC is not similarly situated to the DBE firms it is competing against, MDT's project specific goals are race and gender neutral, and the evidence fails to support MWHC's allegations. In order to qualify for DBE certification, MWHC must meet the definition of a small business. Since MWHC's average gross annual receipts exceeded $22.41 million over the previous three fiscal years, it is ineligible for DBE certification under 49 C.F.R. § 26.65(a) & (b). *See Stipulation of Net Worth, DOC 52-4.* The Court has held that:

> In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental

> constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

*F.C.C. v. Beach Communications, Inc*., 508 U.S. 307, 313 (1993). In this case, the federal program's preference to small business does not violate Title VI. The classification is consistent with the policy of the United States that small business concerns "have the maximum practicable opportunity to participate in the performance of contracts let by any Federal agency." *Adarand Constructors, In*c. v. Pena, 515 U.S. 200, 206 (1995).

Even if MWHC qualified as a small business, it is not similarly situated with its DBE competitors because its owners are not economically disadvantaged as defined by 49 C.F.R. § 26.67(a)(2). *See Stipulation of Net Worth, DOC 52-4*. Once again, on the basis of economic classification, MWHC is not similarly situated to its competitors HL Construction or L&J Construction Group. In *Beach*, the Court held that:

> Defining the class of persons subject to a regulatory requirement—much like classifying governmental beneficiaries—"inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration."

*Beach*, at 315-316, (internal quotation marks and citation omitted). Here the federal regulations have drawn the line of economic disadvantage at $1.34 million. MWHC has stipulated that the net worth of its owners cross that

line. MWHC's owners are not similarly situated to the owners of HL Construction and L&J Construction Group, who are economically disadvantaged, and MWHC cannot demonstrate it is entitled to relief.

**MDT's Contract Goals Are Neutral**

MWHC cannot demonstrate a Title VI violation because the contract goals implemented by MDT, in contrast to the contract goals in *Western States,* are neutral on their face. The project at issue in *Western* States was a City of Vancouver project. Concerning the contract goals, the Ninth Circuit stated that, "[i]n order to comply with TEA-21's minority utilization requirements, the State mandated that the city obtain 14% minority participation on the project." *Western States Paving Co. v. Washington State Department of Transportation, 407 F.3d 983,* 987 (9th Cir.2005). In this case, MDT's contract goals require prime contractors to utilize DBEs to perform a percentage of the contract work. MDT does not mandate that the DBEs be minority-owned or women-owned firms. MDT follows the federal mechanism of certification. 49 CRF 67(d)(1). Firms are eligible for DBE certification if they are small firms at least 51 percent owned by socially and economically disadvantaged individuals. 49 CRF §26.65(a) and 69(b). Thus, there is no evidence that MDT's contract goals make distinctions based on race or gender because DBE's may be owned by persons of any race and gender, including white males such as the owners of MWHC.

Proof of racially discriminatory intent or purpose is required to show a violation of Title VI. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977); see also *Washington v. Davis*, 426 U.S. 229, 242 (1976). MDT's DBE Program is and was facially neutral. While MWHC may argue the program has a disparate impact on large businesses owned by white males, MWHC cannot demonstrate discriminatory intent, and cannot prevail on a disparate impact challenge.

Title VI claims cannot be based on the disparate impact of a facially neutral policy. Proof of racially discriminatory intent or purpose is required to show a violation of the Title VI. *Reynolds v. Barrett*, 685 F.3d 193, 201 (2nd Cir. 2012); *Save our Valley v. Sound Transit*, 335 F.3d 932 (9th Cir. 2003); *Adams v. City of Indianapolis*, 742 F.3d 720, 726 fn. 3(7th Cir. 2014); Henley v. Brown, 686 F.3d 634, 642 (8thCir. 2012).

Title VI prohibits discrimination "on the grounds of race, color or national origin." Statutory construction must begin with the language utilized by Congress and the assumption that the ordinary meaning of the language accurately expresses the legislative purpose. *Gross v. FBL Financial Services,* 557 U.S. 167, 175 (2009). In *Gross,* the Court held that in an action brought under the ADEA, which prohibits discrimination "because of" age, that "the plaintiff retains the burden of persuasion to establish that age was the "but-for" cause of the employer's adverse

action. . . A plaintiff must prove by a preponderance of the evidence . . .that age was the "but-for" cause of the challenged [action]" *Id.* at 177.

"Grounds" means "a basis for belief, action" *Merriam-Webster Collegiate Dictionary* or "the foundation or basis on which a belief or action rests; reason or cause." *Dictionary.com.* The ordinary meaning of "grounds" in Title VI is that someone took an action <u>on the basis of</u> or <u>because of</u> their race, color or national origin. There is no distinction between an action taken "because" of someone's race and taking an action on the "grounds" of someone's race. Because there is no meaningful difference between the language used in the ADEA and Title VI, MWHC bears the burden of proving by a preponderance of the evidence that race, color or national origin was the "but-for" cause of MDT's actions. [See e.g. *Welke v. Madison Metro School Dist.,* 2016 U.S. Dist LEXIS 14821 fn. 12, citing *Serwatka v. Rockwell Engineering,* 591 F.3d 957, 961-2 (7th Cir. 2010). MWHC cannot prove that race was the but-for cause of MDT's action.

The only portion of MDT's DBE program which is not facially neutral is the rebuttable presumptions of social and economic disadvantage in the federal regulations at 49 CFR 26.67(a). To the extent that MWHC is challenging MDT's implementation of the rebuttable presumption in the federal regulations, its challenge is an impermissible collateral attack on the federal regulations. *Northern*

*Contracting v. Illinois,* 473 F.3d 715 (7TH Cir. 2007); *Associated General Contractors v. California,* 713 F.3d 1187, 1200 (9th Cir. 2013).

**Western States**

In *Western States*, the Court held that where Congress had identified a compelling nationwide interest in remedying discrimination in the transportation industry, the state of Washington was not required to demonstrate "an independent compelling interest for its DBE program." *Western States*, at 997. However, it required Washington to demonstrate that its DBE program was narrowly tailored. *Id.* There, the Ninth Circuit devised a two-prong test for narrow tailoring: (1) the state must establish the presence of discrimination within its transportation contracting industry, and (2) the remedial program must be "limited to those minority groups that have actually suffered discrimination." *Id.* at 997–99, see also *Associated General Contractors of America v. California Department of Transportation,* 713 F.3d 1187, 1195-96 (9th Cir.2013). MWHC's argument that MDT must meet other criteria to establish its program is narrowly tailored is incorrect. There is no authority for MWHC's position.

Here, MWHC complains that MDT's project specific goals are based on combined and unweighted data, that MDT's disparity ratio is based upon subcontractor utilization, that the public hearings collecting anecdotal evidence were not well attended, and that MDT's contractor did not conduct enough

personal interviews; and that MDT's DBE program "is not narrowly tailored because it disregards large difference in DBE firm utilization in MDT contracts among three different categories of subcontractors: business categories combined, construction and professional services." Amd.Compl. 6.2-6.6, In the *Caltrans* case, The Ninth Circuit disregarded a similar arguments:

> the issue is not whether Caltrans can show underutilization of disadvantaged business in every measured category of contract. Rather, Caltrans can meet the evidential standard required by *Western States* if, looking at the evidence in its entirely, the data shows substantial disparity in utilization of minority firms suggesting that public dollars are being poured into "a system of racial exclusion practiced by elements of the local construction industry.

*Assoc. General Contractors of America*, at 1197, citing *Western States*, at 492.

The party challenging the constitutionality of the DBE Program bears the burden of demonstrating that the government's evidence did not support an inference of prior discrimination. *Adarand Constructors, Inc. v. Slater*, 228 F 3d 1147, 1166 (10th Cir 2000). To show that a state has violated the narrow tailoring requirement of the program, a challenger must demonstrate that "better data was available" and the recipient of federal funds "was otherwise unreasonable in undertaking [its] thorough analysis and in relying on its results." *Sherbrooke Turf, Inc. vs. Minn. Dep't of Transp., 345 F.3d 971, 973* (8th Cir. 2003).

In this case, MWHC cannot prove that MDT's evidence does not support an inference of prior discrimination as required by *Adarand*. Likewise, it cannot

show that "better data was available" or that MDT was unreasonable in relying upon the statistical and anecdotal evidence of discrimination when MDT set project specific goals on 62 of the 237 project it awarded between June 2012 and April 2014.

There was substantial quantitative and qualitative evidence of discrimination in the Montana highway construction industry, as evidenced by the D.Wilson Disparity Study and the Keen Disparity Study. Evidence indicates the existence of a good old boy network in Montana that works to exclude DBE firms form competing with non-DBE firms such as Mountain West.

Finally, with respect to MWHC's challenge to MDT's DBE certification process, MWHC alleges that:

> MDT DBE certification process is not narrowly tailored because the certification process does not require the applicant to specify any specific racial or ethnic prejudice or cultural bias that had a negative impact upon his or her business success. Nor does the certification process require the applicant to certify that he or she was discriminated against in the State of Montana in highway construction...

Amd.Compl. 6.7

It is undisputed that MDT has adopted the federal DBE certification standards. Thus, MWHC's attack on MDT's certification process is an impermissible collateral attack on federal program. MWHC is not challenging the federal program. Thus, it cannot argue that MDT's use of the federal standards to

certify DBEs proves that MDT's program is not narrowly tailored.

**<u>Title VI</u>**

MWHC has sued MDT for damages under Title VI. The Ninth Circuit has held:

> Plaintiffs' § 1983 claims alleging violations of equal protection and Title VI require similar proofs—plaintiffs must show that actions of the defendants had a discriminatory impact, and that defendants acted with an intent or purpose to discriminate based upon plaintiffs' membership in a protected class.

*Comm. Concerning Community Improvements v. Modesto*, 583 F.3d. 690, 70-703 (9th Cir.2009), citing *Lee*, 250 F.3d 686–87. "As previously discussed, based upon the annual revenue of the firm and the net worth of its owners, MWHC is not similarly situated to HL Construction and L&J Construction Group.

MDT also contends that MWHC cannot prevail on its Title VI claim where MDT's project specific goals are racially neutral since there is no private right of action for disparate impact discrimination under Title VI. *Cowell v. Dept. of Health and Human Services*, 558 F.3d 1112, 1129 (9th Cir 2009), *citing Alexander v. Sandoval*, 532 U.S. 275 (2001).

However, even if the Court entertains MWHC's discrimination claim under Title VI, its argument, as pleaded is not sustainable.

In its Amended Complaint, MWHC alleges that:

The State of Montana, through MDT, is involved in race, color and national origin discrimination because it gives preference in awarding

contacts based upon the <u>awardees'</u> race, color, and national origin, by providing preference to Black Americans, Native Americas, Asian Pacific Americans, Subcontinent Asian Americans, and Hispanic American over others.

Amended Complaint, 7.2 (emphasis added). It is undisputed that MDT only awards contacts to the prime contractor, not subcontractors. While MWHC serves as both a prime contractor and a subcontractor on MDT projects, there is no evidence that MDT <u>awarded</u> any project based upon the race, color, and national origin of the awardee or prime contractor.

Finally, it is undisputed that the four contracts for which MWHC seeks damages were awarded to firms owned by women. The cause of any damages to MWHC were based upon decisions made on the basis of gender, not race or national origin. MWHC cannot prove that its damages were caused by racial or national origin discrimination.

**<u>Damages</u>**

MWHC is seeking damages under Title VI. It is not entitled to compensatory relief for unintentional violations of Title VI. *Guardians Ass'n v. Civil Service Com'n of City of New York*, 463 U.S. 582, 607 (1983).

Rather, MWHC has alleged that it lost four subcontracts as a result of MDT's imposition of contract goals: Canyon Ferry Road-Helena, *Amd.Compl.* 4.17*;* Amsterdam Road/I-90 Eastbound Onramp, *Amd.Compl.* 4.18*;* Bonner Interchange-East (I-90), *Amd Compl.* 4.19; and Norris East, *Amd.Compl.* 4.20.

Mountain West alleges that it was the low bidder for certain work on these four projects, and that the prime contractor selected a higher quote from a DBE firm because of the contract goals. As previously discussed, MWHC's Title VI claim rests on its allegation that MDT discriminated against it in its capacity as an awardee or prime contractor. It presents no claim for damages in its capacity as a prime contractor.

DATED this 20th day of February, 2018.

/s/ David L. Ohler
DAVID L. OHLER
VALERIE D. WILSON
Attorneys for Defendants

*Mountain West Holding Co. v. MDT*  
*Defendants' Pre-Trial Brief*  
*Page 16*

## CERTIFICATE OF COMPLIANCE

I certify that this brief contains 3383 words, excluding caption, certificates of service and compliance, table of contents and authorities, and exhibit index, as calculated by Microsoft Word software.

*/s/ David L. Ohler*

## CERTIFICATE OF SERVICE

      I certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system on the 20th day of February, 2018, which will send notification of said filing to the following:


Mark D. Parker     markdparker@parker-law.com
Gary Lofland       glofland@glofland.net
Casey Heitz        caseyheitz@parker-law.com


                        */s/ David L. Ohler*